*Court of Common Pleas, Dauphin County, January 18th, 1868.*

THE COMMONWEALTH OF PENNSYLVANIA *v.* THE . CENTRAL
PETROLEUM COMPANY.

A corporation which has paid a bonus for its charter is not exempt from future taxation. One paying a tax on its capital stock, to be measured by the amount of its dividends, is also liable to a tax on its net earnings.
A foreign corporation doing business within Pennsylvania is bound to pay a tax on its net earnings, and the fact that it also pays one to the State by which it is chartered does not relieve it.

BY THE COURT.—The defendant, a corporation created by the laws of New York for mining purposes, carried on business in the State of Pennsylvania by boring for and obtaining mineral oil. It claims to hold land in this State under the provisions of the act of April 21st, 1854, and its various supplements, especially the second section of the act of July 22d, 1863, and to transact its business here under the authority of our laws. A report was made to the department of the net earnings of this company for the year ending November 1st, 1866, amounting to $400,000, on which it was taxed under the second section of the act of April 30th, 1864, at the rate of three per centum. From this settlement of the auditor-general and State treasurer it has taken an appeal.

Several questions have been raised by way of defence.

*First.* That this company has paid a tax of one-half of one per cent. on its capital stock, as provided in the sixth section of the act of April 24th, 1854, which is in lieu of all other taxes. This provision, as we understand it, is not in lieu of any taxes, but is a *bonus* paid for its charter, the same as required from almost every money corporation within the commonwealth, and has no effect on the powers of taxation, which cannot be taken away unless by clear words. It is a power incident to every State, and cannot be presumed to have been surrendered, unless clearly so expressed and for a valuable consideration.

*Second.* It has paid, or is bound to pay a tax of one-half per cent. on each one per cent. of its *dividends*, under the act of 1859.

There is no tax imposed on dividends under that act. On the contrary, it is repealed thereby as to all corporations, excepting those connected with banking, and a tax is imposed on *capital stock* in lieu thereof. True, that tax is measured generally by the amount of dividends; but the law distinguishes between the two, and in terms repeals the tax on dividends. For our views in full on this subject, we refer to our charge delivered at the present term in the case of The Commonwealth *v.* The Phœnix Iron Company (1 Pearson, 383).

[The Commonwealth of Pennsylvania v. The Central Petroleum Company.]

This company has failed to show that it ever paid a penny of tax, either on dividends or capital stock, except that paid by way of *bonus* on its capital, if it even paid that into the State treasury, which is questionable.

*Third.* This being a corporation created under the laws of another State, and its capital stock principally held by the citizens thereof, cannot be taxed by this State because it carries on its business therein, as such stock is subject to taxation in the State where created and located.

The act of Assembly which imposes a tax on the net earnings or income of a corporation does not confine its provisions to those created by our laws, but applies to all " companies or corporations *doing business in this commonwealth.*"    The defendant comes clearly within the letter and, we conceive, within the intention of the act.    All of its business is transacted within this commonwealth.    Here it has its land, carries on its mining (if pumping oil from the earth can be called mining), holds its land by virtue of our laws, and receives protection to its property therefrom. The business done in New York is merely financial; all of its mining is done in Pennsylvania.    Its net earnings are made here, and there is no good reason why it should escape the payment of taxes into our treasury.

If anything were wanting to make the intention of the legislature to tax the foreign corporations more manifest, we have it in the first section of the act of March 23d, 1865, which makes it the duty of all such doing business in this State to make the same returns and pay the same taxes as is required from those chartered under our laws.

It is said, however, that we have no power to impose a tax on the stock or business of any corporation not created by the laws of this State; that it has no connection with us except that of holding " not exceeding three hundred acres of land," under the second section of the act of July 22d, 1863.    It is very true that this company holds its whole mining property and carries on its business here by virtue of that act and of that alone; for without its provisions, no land in Pennsylvania could be lawfully held by it, nor could it transact any business here.    But it knew, or was bound to know, when accepting the conveyance and putting its works into operation, that it was subjecting itself to our tax laws, and cannot complain if it is obliged to bear the same burdens as our own companies of like character.    There would be more plausible ground to complain if the tax had been charged against its capital stock, as that was held by non-residents; but this is on the profits of its business made out of Pennsylvania land, and carried on within our borders.    The case of Maltby v. The Reading & C. R. R. Co. (2 Smith, 140), was much more favorable for the non-resident than this; yet the Supreme

[The Commonwealth of Pennsylvania *v.* The Central Petroleum Company.]

Court, through a very able opinion delivered by Chief Justice Woodward, decided that a foreigner was obliged to pay a tax on the bonds held on the company, and that the same could be deducted from his coupons.

*Fourth.* It is complained that this is a case of double taxation, the defendant being subjected to the payment of a tax by the laws of New York, also on its capital stock in Pennsylvania, on the land held here, and now on its annual net earnings.

We do not know that this company pays one dollar of tax in the State of New York; but if it does, the burdens are of its own seeking. It was bound to know that when it accepted its charter from one sovereignity and held its property and transacted its business under the laws of another, that it was creating a double allegiance which might bring it into trouble—at least, be obliged to pay, in the form of taxation, for the protection received from each. Should it pay on capital stock, land, and profits, it is precisely what is done by every mining and manufacturing company incorporated under the laws of Pennsylvania. Nor is there anything improper or illegal in double taxation. It has been repeatedly sustained by our courts in similar cases (see The Lackawanna Iron Company *v.* Luzerne County, 6 Wright, 424, and the cases there cited). If the legislature can lawfully tax, it can do it as often and in as many forms as the exigencies of the State may require. It is a mistake, however, to suppose that this company pays a dollar of tax into the State treasury on its land. That tax was abolished on the twenty-third day of February, 1866.

We instruct you that this company was properly charged with the tax on its net earnings, as reported to the department by its own officers. You will, therefore, render a verdict in favor of the commonwealth for $12,000, with interest at the rate of six per cent., from the 11th of March, 1866, being three months after the date of settlement.

AFFIRMED BY THE SUPREME COURT, May 27th, 1868.

*B. H. Brewster, for plaintiff.*

*H. Alricks, for defendant.*